(169 App. Div. 531)

## In re KALISKY.

(Supreme Court, Appellate Division, First Department. November 5, 1915.)

ATTORNEY AND CLIENT ⬅38—DISBARMENT OR SUSPENSION—ACTS CONSTITUTING MISCONDUCT.

Respondent was attorney for the borrowers in connection with the procuring of a loan. At the closing of the transaction one of the lender's attorneys presented their bill and demanded payment, and refused respondent's offer to pay later, insisting upon immediate payment, in default of which the loan would be declared off. Respondent thereupon drew his check for the amount of the bill, but subsequently stopped payment and withdrew his balance from the bank to meet other demands, and failed to pay the check until judgment was recovered thereon. The facts indicated that it was not his intention to pay the check until the receipt of funds from one of his clients, and that by the concealment of this intention the lender's attorney was misled into accepting the check as full payment. *Held*, that respondent should be suspended from practice for one year, as it was clear that he did not give the check in good faith, but for the purpose of misleading the lender's attorney, and even though he intended to

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

deliver the check as an immediate and unconditional obligation, his subsequent acts in stopping payment, using the money in the bank for other purposes, thus rendering himself unable to pay, and then delaying payment until compelled by legal proceedings, constituted official misconduct.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 51, 61; Dec. Dig. ☞38.]

Proceeding on charges against Abraham Kalisky, an attorney and counselor at law, for professional misconduct. On application on the report of the official referee. Respondent suspended from practice.

See, also, 165 App. Div. 908, 149 N. Y. Supp. 1089.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, and DOWLING, JJ.

Einar Chrystie, of New York City (Walbridge S. Taft, of New York City, of counsel), for petitioner.

Adolph B. Rosenfield, of New York City, for respondent.

PER CURIAM. The facts upon which the respondent has been found guilty of unprofessional conduct are thus stated by the official referee, and are fully supported by the evidence:

"On Saturday, May 3, 1913, the Patchogue Lyceum Company, in order to obtain a loan from the Southhold Savings Bank of Suffold County, executed to said bank a bond secured by a mortgage upon real estate. Among several parties interested in obtaining said loan, besides the Patchogue Lyceum Company, was a Mr. Harris, who was a purchaser of the stock of the company, and at the closing of the loan the respondent acted as his attorney, as well as attorney for the mortgagor. The application for the loan had been made by Harris and the Patchogue Lyceum Company and accepted by the bank on condition that the title should be searched by Reeve & Bartlett, its attorneys. William K. Hammond, Jr., acted as the representative of said firm at the closing of the transaction. Before the money was paid over and the bond and mortgage accepted, Mr. Hammond presented the bill of Reeve & Bartlett for $118.75 for their fees and disbursements in connection with the matter and demanded its payment. The respondent asked Mr. Harris to pay it, and then asked Mr. Roe to pay it, who represented the then owners of the stock of the Patchogue Lyceum Company. They both refused, and the respondent then offered to pay it at a later time after the closing. This offer was refused by Mr. Hammond, who insisted upon immediate and unconditional payment, in default of which the loan would be declared off. In order to secure the loan for his clients, the respondent drew his check for the amount of the bill on the Chatham Phenix National Bank and delivered it unconditionally to Mr. Hammond, who thereupon handed over the amount of the loan as the parties in interest then and there agreed and accepted the bond and mortgage.

"On Monday, May 15, 1913, before the close of banking hours on that day, the respondent stopped the payment of the check, and the same was not paid when subsequently presented. After demand for payment had been made upon respondent without success, suit was brought to recover the amount and judgment was recovered thereon and after some negotiations the amount of the judgment was paid on February 14, 1914. The facts so far stated are admitted by the respondent. The check in question was returned by the bank for alleged insufficient funds, but this was an erroneous statement by the bank; the real reason being that payment had been stopped. At the time the check was given the respondent did have a sufficient balance in the bank to meet the same, but as soon as payment had been stopped he did apply the said balance to meet other pressing demands upon him.

"The only question remaining to be determined, therefore, is as to the intent of the respondent in giving the check and stopping payment of the same. In the course of the hearing before me the respondent repeatedly stated that it was his intention to pay the check; but, taking the whole of his testimony and his actions together, it will readily be seen that his real intent was to pay it on receipt of funds for that purpose from his client, Mr. Harris. His cross-examination shows that when he begged for time to pay he put it upon the ground that Harris had promised to put him in funds and that he relied on that promise. That Harris had promised to put him in funds for that purpose I do not doubt. But respondent's intention not to pay before he received the money for that purpose was not communicated to Mr. Hammond, who insisted upon immediate and unconditional payment of the bill, and by the concealment of respondent's real intention was misled into accepting the check as full payment. The respondent must therefore be deemed to have acted in this matter in bad faith.

"But even if he at the time had intended to deliver his check as an immediate and unconditional obligation, his subsequent acts of stopping payment, using the money in bank for other purposes, and thus rendering himself unable to pay, and then delaying payment for a considerable period, until finally compelled by legal proceedings, clearly constitute official misconduct."

We have examined the evidence with care, and entirely concur with the referee, both in his findings as to the facts and in his deductions therefrom. We consider it perfectly clear that respondent did not give the check in good faith, but solely for the purpose of misleading the attorney for the bank. It is impossible to overlook conduct of this character. The honor of the profession requires that we should mark our disapproval by imposing adequate discipline.

The respondent is suspended from practice for one year, with leave to apply at the expiration of that period for reinstatement, upon showing compliance with the conditions to be recited in the order to be entered hereon.